**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| RYAN SCHRADER, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| TALENTMOVERS LLC, | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiff Ryan Schrader ("Plaintiff"), individually and on behalf of all others similarly situated, brings this putative class action against Defendant Talentmovers LLC ("Defendant") and, based upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and upon information and belief, supported by the investigation of counsel, as to all other matters, alleges as follows:

**NATURE OF THE ACTION**

1. This putative class action arises out of Defendant's systematic and willful violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*., and its implementing regulations adopted by the Federal Communications Commission ("FCC"), codified at 47 C.F.R. § 64.1200, *et seq*.

2. As alleged herein, Defendant engaged in a pattern of unlawful telemarketing by targeting Plaintiff and the proposed Class ("Class," defined below) with unsolicited telephone solicitations, causing widespread annoyance and harm, in violation of the TCPA including by contacting numbers registered on the National Do Not Call Registry ("National DNC") in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c); and failing to maintain the "minimum standards"

for statutorily required "procedures for maintaining a list of persons who request not to receive such calls," pursuant to 47 C.F.R. § 64.1200(d).

3. Through this action, Plaintiff seeks an award of actual and statutory damages to Plaintiff and the Class to compensate for the injuries inflicted by Defendant's misconduct, and injunctive relief to halt ongoing and future unlawful telemarketing practices in violation of the TCPA.

## JURISDICTION AND VENUE

4. **Subject Matter Jurisdiction**. This Court has federal question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331, as those claims arise under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.

5. **Personal Jurisdiction**. This Court has personal jurisdiction over Defendant because Defendant is organized under the laws of Puerto Rico and maintains its principal place of business in Puerto Rico.

6. **Venue**. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, and because Defendant resides in this district and is subject to personal jurisdiction in this district.

## PARTIES

7. Plaintiff is a natural person and, at all relevant times, was a resident of Pinellas County, Florida.

8. Defendant is a legal entity organized under the laws of Puerto Rico with its principal place of business in Guaynabo County, Puerto Rico.

2

**TCPA BACKGROUND**

9.    In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, to curb the explosive growth of abusive telemarketing practices that invade consumer privacy and disrupt daily life. Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy," particularly through automated technologies like robocalls and text messages. Pub. L. No. 102-243, § 2(5) (1991). The TCPA targets unwanted calls and text messages, such as those alleged herein, to protect consumers from unsolicited intrusions. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (noting TCPA's response to "voluminous consumer complaints about abuses of telephone technology").

10.    The TCPA applies equally to unsolicited text messages, which cause identical privacy harms as calls. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA]"); *Drazen v. Pinto*, 74 F.4th 1336, 1343 n.5 (11th Cir. 2023) ((Through its enactment of the TCPA, Congress "targeted unwanted text messages (as well as unwanted phone messages)."). Violations of the TCPA cause concrete harm like invasion of privacy and annoyance, which Congress deemed actionable without additional injury. *See Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ("[W]e hold that the receipt of an unwanted text message causes a concrete injury[.]"); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (citing *Spokeo*, 578 U.S. at 341).

11.    The TCPA prohibits initiating any call, other than for emergency purposes or with prior express consent, using an ATDS or an artificial or prerecorded voice to a cellular telephone number. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii). An ATDS is defined as equipment with the capacity to store or produce numbers using a random or sequential number

generator and dial them. 47 U.S.C. § 227(a)(1); *see Facebook, Inc. v. Duguid*, 592 U.S. 395, 405 (2021). The TCPA also restricts telemarketing calls to residential subscribers before 8 a.m. or after 9 p.m., local time, and to residential subscribers whose phone numbers are registered on the National DNC, without prior express invitation or permission, and makes such claims actionable after more than one call in a 12-month period. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). The TCPA further mandates that telemarketers maintain procedures for honoring do-not-call requests, including a written policy and training, with violations actionable if two or more telephone solicitations are made after a request to stop. 47 C.F.R. § 64.1200(d); 47 U.S.C. § 227(c)(5). Cellular numbers registered on the DNC are presumed residential. *In re Rules & Regs. Implementing the TCPA*, 18 FCC Rcd. 14014, 14039 (2003).

12.     Telemarketing calls require prior express written consent, defined as "an agreement, in writing, that bears the signature of the person called or texted that clearly and conspicuously authorizes no more than one identified seller to deliver or cause to be delivered to the person called or texted advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice." 47 C.F.R. § 64.1200(f)(9). A called party may revoke prior express consent to receive calls or text messages by using "any reasonable method to clearly express a desire not to receive further calls or text messages from the caller or sender." 47 C.F.R. § 64.1200(a)(10).

13.     Irrespective of any consent to receive telemarketing solicitation, the TCPA makes it unlawful for "[a]ny person or entity that engages in telemarketing, as defined in section 64.1200(f)(10)" to fail to "transmit caller identification information[,]" which "must include either CPN [calling party number] or ANI [automatic numbering information], and, when available by

the telemarketer's carrier, the name of the telemarketer[,]" and "must permit any individual to make a do-not-call request during regular business hours." 47 C.F.R. § 64.1601(e).

14. An entity can be vicariously liable under the TCPA for a call made on its behalf. Under those circumstances, the entity is deemed to have initiated the call through the person or entity. In a 2008 Declaratory Ruling, the FCC stated that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1121 (11th Cir. 2014) ("The 2008 FCC Ruling thus has the force of law[.]").

15. The FCC has also made clear that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id*. Thus, any second call placed to a wrong number violates the TCPA.

16. The TCPA provides statutory damages of $500 per violation, trebled to $1,500 for willful or knowing violations, and injunctive relief to halt ongoing misconduct. 47 U.S.C. § 227(b)(3), (c)(5).

**FACTUAL ALLEGATIONS**

17.    At all relevant times Plaintiff was a residential subscriber and primary user of a cellular telephone number ending in 1750.

18.    This is Plaintiff's personal phone line that is used as Plaintiff's residential phone line and is the primary means for friends and family to reach Plaintiff at home.

19.    At no point in time did Plaintiff provide Defendant with prior express consent.

20.    Defendant initiated or caused to be initiated numerous unlawful telephone solicitations to Plaintiff's telephone number in violation of the TCPA.

21.    Below are non-exhaustive examples of some of the unlawful telephone solicitations that Defendant initiated to Plaintiff, and upon information and belief, Plaintiff alleges that discovery will identify additional unlawful communications to Plaintiff's phone that were initiated by Defendant or on its behalf within the last four years.

7





22.     The above solicitations identified Defendant as the responsible party.

23.     The URL address in Defendant's solicitations leads to a website owned and/or controlled by Defendant.

24.     The caller identification "Caller ID" number associated with these solicitations is owned and/or controlled by Defendant.

25.     Based on Plaintiff's investigation, the telephone solicitations identified above were initiated by Defendant or on its behalf.

26.     Each solicitation was sent for the purpose of promoting or encouraging the purchase of Defendant's goods or services.

8

27. Plaintiff requested to not receive further telephone solicitations from Defendant or on Defendant's behalf.

28. Based upon information and belief, Defendant maintains records of these interactions.

29. Despite Plaintiff's stop requests, Defendant continued to initiate unsolicited telemarketing solicitations to Plaintiff's phone.

30. Given the capabilities of modern telemarketing technology Defendant has the ability to immediately comply with do-not-call requests.

31. By failing to immediately record and honor Plaintiff's do-not-call request and continuing to initiate telemarketing telephone solicitations after that request, Defendant failed to honor Plaintiff's do-not-call request "within a reasonable time." *See Lourie v. Papa John's Int'l, Inc.*, No. 1:23-CV-4320-MHC, 2024 U.S. Dist. LEXIS 119679, at *9-10 (N.D. Ga. June 25, 2024) ("Because the Court must accept as true [plaintiff's] allegation that 'Defendant has the capability of immediately complying with Plaintiff's [do-not-call] request,' at this stage of the dispute, the Court must infer that Defendant could have immediately complied with the request prior to the transmittal of the two telemarketing text messages in the week following Lourie's request.") (internal citations omitted).

32. Defendant's failure to honor Plaintiff's do-not-call requests strongly suggests that Defendant also does not meet the other "minimum standards" for the "procedures for maintaining a list of persons who request not to receive" that telemarketers must maintain, such as (1) a written policy for maintaining an internal do-not-call list, as required by 47 C.F.R. § 64.1200(d)(1); (2) informing and training its personnel engaged in telemarking on the existence and use of any internal do-not-call list, as required by Section 64.1200(d)(2); (3) "record[ing] the request and

9

plac[ing] the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made," as required by Section 64.1200(d)(3); and (4) maintain a record of a consumer's request not to receive further calls, as required by Section 64.1200(d)(6).

33.    Indeed, it is implausible that Plaintiff would have continued receiving solicitations after a do-not-call request if Defendant maintained these procedures, as it was required to.

34.    Defendant's unlawful telephone solicitations caused Plaintiff and the Class members concrete injury and actual damages, including inconvenience, invasion of privacy, aggravation, annoyance, intrusion upon seclusion, wasted time, consumption of their phone battery and/or data, violation of their statutory privacy rights, and disruption to their personal and daily life as Plaintiff received the unlawful telephone solicitations at inconvenient times, causing Plaintiff to stop to check their phone to confirm the telephone solicitations were not for an emergency purpose, and because Plaintiff was forced to spend time investigating the source of the telephone solicitations and seeking out legal counsel to stop Defendant's harassing solicitations.

35.    Based upon information and belief, Defendant maintains and/or has access to outbound and inbound transmission reports for all telephone solicitations sent for the purpose of encouraging or promoting the sale of its goods and services, which show the dates, times, target telephone numbers, and content of each telephone solicitation made to Plaintiff and the Class members.

### CLASS ALLEGATIONS

36.    Plaintiff brings this action individually and as a class action under Fed. R. Civ. P. 23(a) and (b)(3) on behalf of the following proposed Classes:

> **TCPA National DNC Class:** All persons in the United States who, during the period beginning four years prior to the filing of this action and ending on the date of class certification, (1) received two or more text messages (2) in any 12-month period (3) from Defendant or on its behalf (4) for the purpose of encouraging the

purchase or rental of, or investment in, property, goods, or services, (5) after their telephone number had been listed on the National DNC for at least thirty-one days.

**TCPA Internal DNC Class**: All persons in the United States who, during the period beginning four years prior to the filing of this action and ending on the date of class certification, (1) received two or more text messages (2) in any 12-month period (3) from Defendant or on its behalf (4) for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, (5) after making a request to not receive solicitation from Defendant or on its behalf.

37.     The Classes defined above are referred to herein individually or collectively as the "Class."

38.     Plaintiff reserves the right to expand or narrow the Class definitions following discovery.

39.     Excluded from the Class are Defendant and its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

40.     *Numerosity*. The members of the Class are so numerous that individual joinder is impracticable. Although the exact number of Class members is unknown, Plaintiff alleges upon information and belief that each Class includes at least 40 members based on the nature and objective of telemarketing campaigns, which are designed to reach a large volume of potential customers (called "leads" in the industry), in order to convert a small percentage of those leads into actual customers to ultimately drive increased sales to the company that engage in telemarketing. Class members are ascertainable through objective criteria, such as Defendant's call and text records, which Defendant maintains, allowing identification through discovery.

41.     ***Common questions of law and fact predominate.*** There are numerous questions of law and fact that are common to the Class that predominate over any questions affecting only

11

individual members of the Class, which will produce common answers that will drive resolution of the litigation, and they include, but are not limited to, the following:

A.      Whether Defendant contacted numbers registered on the National DNC in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c);

B.      Whether Defendant failed to maintain the "minimum standards" for statutorily required "procedures for maintaining a list of persons who request not to receive such calls" pursuant to 47 C.F.R. § 64.1200(d);

C.      Whether Defendant disregarded requests to not receive further solicitations;

D.      Whether Defendant's solicitations introduced an advertisement;

E.      Whether Defendant's solicitations constitute "telephone solicitations" and/or "telemarketing" under the TCPA;

F.      Whether Defendant's conduct was knowing and/or willful;

G.      Whether Plaintiff and the Class are entitled to statutory damages, and/or punitive damages, and the amount of such damages; and

H.      Whether Defendant should be enjoined from further violations of law alleged herein.

42.     *Typicality*. Plaintiff's claims are typical of the Class members' claims under Fed. R. Civ. P. 23(a)(3) because they arise from the same course of conduct by Defendant and are based on the same legal theories. Plaintiff and Class members suffered similar harms, and Plaintiff is not subject to unique defenses.

43.     *Adequacy of representation*. Plaintiff will fairly and adequately protect the Class's interests under Fed. R. Civ. P. 23(a)(4). Plaintiff has retained counsel experienced in complex

12

consumer class actions and TCPA litigation and intends to vigorously prosecute this action. Plaintiff has no interests antagonistic to the Class.

44.    ***Superiority***. A class action is superior to other methods for fairly and efficiently adjudicating this controversy under Fed. R. Civ. P. 23(b)(3). Individual litigation is economically infeasible due to the high costs relative to individual, making separate lawsuits impractical. Class treatment avoids burdening the court system with numerous individual cases and prevents inconsistent rulings or standards for Defendant. For example, one court might enjoin Defendant's conduct while another might not, creating conflicting obligations. Class members are unlikely to pursue individual claims due to the modest damages relative to litigation costs.

45.    In addition to satisfying the prerequisites of Fed. R. Civ. P. 23(a), Plaintiff satisfy the requirements for maintaining a class action under Fed. R. Civ. P. 23(b) because:

A.    The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

B.    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

C.    Defendant has acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Class as a whole; and

D.    Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## CAUSES OF ACTION

### COUNT 1

**Violation of the TCPA, 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National DNC Class)**

46.    Plaintiff incorporates by reference and realleges the allegations in the paragraphs above as though fully set forth herein.

47.    The TCPA established a National DNC Registry of phone numbers of consumers who object to receiving telephone solicitations. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014.

48.    The TCPA's implementing regulations adopted by the FCC provide that "[n]o person or entity shall initiate any telephone solicitation to[] [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." 47 C.F.R. § 64.1200(c)(2).

49.    The law "presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'" *In Re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,* 18 F.C.C. Rcd. 14014, 14038–39 (2003).

50.    A violation of Section 64.1200(c) is actionable through 47 U.S.C. § 227(c)(5), which grants a private right of action to any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of [Section 64.1200(c)]." 47 U.S.C. § 227(c)(5).

51.     As alleged herein, Defendant—or third-parties acting on Defendant's behalf—initiated, or caused to be initiated on its behalf, more than one telephone solicitation in a 12-month period to the residential telephone lines of Plaintiff and the Class members while their telephone numbers were registered on the National DNC.

52.     Defendant's telephone solicitations to Plaintiff and the Class members constitute "telephone solicitations" under the TCPA because they were initiated "for the purpose of encouraging the purchase or rental of…property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

53.     Defendant did not have prior express written consent to initiate telephone solicitations to Plaintiff and the Class.

54.     Defendant did not have prior express consent to initiate telephone solicitations to Plaintiff and the Class.

55.     Defendant did not have prior express invitation or permission to initiate telephone solicitations to Plaintiff and the Class.

56.     Plaintiff did not transact business with Defendant within 18 months of Defendant's telephone solicitations.

57.     Plaintiff did not make an inquiry regarding Defendant's products or services within three months of Defendant's telephone solicitations.

58.     As a result of Defendant's violations of the TCPA, Plaintiff and the Class members were harmed.

59.     Plaintiff and the Class members are entitled to injunctive relief to stop Defendant's ongoing and future violations of the TCPA. 47 U.S.C. § 227(c)(5)(A).

60. Plaintiff and the Class members are entitled to an award of statutory damages of $500.00 for each telephone solicitation that Defendant placed in violation of the TCPA. 47 U.S.C. § 227(c)(5)(B).

61. Because Defendant knew or should have known that it was initiating telephone solicitations to numbers on the National DNC without the requisite level of consent, Defendant's violations of the TCPA were willful or knowing.

62. Plaintiff and the Class are entitled to an award of treble statutory damages of $1,500.00 for each telephone solicitation that Defendant placed in knowing or willful violation of the TCPA. 47 U.S.C. § 227(c)(5)(C).

## COUNT 2

### Violation of the TCPA, 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)
### (On Behalf of Plaintiff and the TCPA Internal DNC Class)

63. Plaintiff incorporates by reference and realleges the allegations in the paragraphs above, except for the paragraphs in the preceding Count, as though fully set forth herein.

64. The TCPA's implementing regulations adopted by the FCC prohibit telemarketers from initiating any call for telemarketing purposes unless they institute certain procedures to ensure do-not-call requests are honored:

> No person or entity shall *initiate…any call for telemarketing purposes* to a residential telephone subscriber *unless* such person or entity has *instituted procedures for maintaining a list of persons who request not to receive such calls* made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d) (emphasis added).

65. Section 64.1200(d) requires that "[t]he procedures instituted *must meet* the following *minimum standards*:"

16

(1)  ***Written policy***. Persons or entities making…calls for telemarketing purposes ***must have a written policy***, ***available upon demand***, for maintaining a do-not-call list.

(2)  ***Training of personnel***. Personnel…engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3)  ***Recording, disclosure of do-not-call requests***. If a person or entity making…any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity ***must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list*** at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) ***must honor a residential subscriber's do-not-call request within a reasonable time*** from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not- call request. A person or entity making…any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

*          *          *

(6)  ***Maintenance of do-not-call lists.*** A person or entity making…any call for telemarketing purposes must maintain a record of a consumer's request not to receive further calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(1)-(6) (emphasis added).

66.   A violation of Section 64.1200(d) is actionable through 47 U.S.C. § 227(c)(5), which grants a private right of action to any "person who has received more than one telephone

17

call within any 12-month period by or on behalf of the same entity in violation of [Section 64.1200(d)]." 47 U.S.C. § 227(c)(5).

67.    As alleged herein, Defendant—or third-parties acting on Defendant's behalf—initiated, or caused to be initiated on its behalf, more than one telephone solicitation in a 12-month period to Plaintiff and the Class members without instituting the "minimum standards" for "procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity."

68.    Specifically, Defendant placed two or more telephone solicitations for telemarketing purposes to Plaintiff and the Class on their residential line.

69.    Defendant's telephone solicitations to Plaintiff and the Class constitute "telemarketing" under the TCPA because they were initiated "for the purpose of encouraging the purchase or rental of…property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(13).

70.    When Plaintiff and the Class received telemarketing telephone solicitations from Defendant or on its behalf, they made "do-not-call" requests.

71.    Defendant failed to "honor [Plaintiff's and the Class members'] do-not-call request within a reasonable time" and continued initiate telemarketing telephone solicitations to Plaintiff and the Class.

72.    By failing to "honor a residential subscriber's do-not-call request within a reasonable time," Defendant failed to meet the required "minimum standard" of Section 64.1200(d)(3).

73.    Defendant's failure to honor Plaintiff's repeated do-not-call requests also strongly suggests that Defendant also does not meet the other "minimum standards" for the required "procedures for maintaining a list of persons who request not to receive" telemarketing.

18

74. Because Defendant does not meet the "minimum standards" of Section 64.1200(d), Defendant violated Section 64.1200(d) every time it "initiate[d] *any call* for telemarketing purposes," regardless of whether the recipient made a do-not-call request. 47 C.F.R. § 64.1200(d) (emphasis added).

75. As a result of Defendant's violations of the TCPA, Plaintiff and the Class members were harmed.

76. Plaintiff and the Class members are entitled to injunctive relief to stop Defendant's ongoing and future violations of the TCPA. *See* 47 U.S.C. § 227(c)(5)(A).

77. Plaintiff and the Class members are entitled to an award of statutory damages of $500.00 for each telephone solicitation that Defendant placed in violation of the TCPA. *See* 47 U.S.C. § 227(c)(5)(B).

78. Because Defendant knew or should have known that it was initiating calls for telemarketing purposes without instituting the "minimum standards" for the "procedures for maintaining a list of persons who request not to receive such calls" required by Section 64.1200(d), Defendant's violations of the TCPA were willful or knowing.

79. Thus, Plaintiff and the Class members are entitled to an award of treble statutory damages of $1,500.00 for each telephone solicitation that Defendant placed in knowing or willful violation of the TCPA. *See* 47 U.S.C. § 227(c)(5)(C).

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases, call logs, text message records, or other itemizations associated with the

allegations herein, including those in the possession of any vendors, individuals, or companies contracted, hired, or directed by Defendant to assist in initiating the alleged unlawful solicitations. This includes but is not limited to records identifying telephone numbers contacted, dates and times of the solicitations, consent documentation, and do-not-call requests.

<strong>PRAYER FOR RELIEF</strong>

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for the following relief:

A.    An order certifying the Class, appointing Plaintiff as Class Representative, and Plaintiff's counsel as Class Counsel;

B.    An award to Plaintiff and each Class member of actual damages;

C.    An award to Plaintiff and each Class member of statutory damages of $500 per violation of the TCPA, trebled to $1,500 for knowing or willful violations;

D.    An injunction prohibiting Defendant from further violations of the TCPA;

E.    An award to Plaintiff and the Class of their reasonable attorney's fees as available under the law;

F.    An award to Plaintiff and the Class of their costs of this action as available under the law;

G.    An award to Plaintiff and the Class of post-judgment interest as available under the law; and

H.    Any such further and other relief as the Court deems just and equitable.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 27th day of July 2026.

**I HEREBY CERTIFY** that on this date I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record.

/s/ Jairo Mellado-Villarreal
Jairo Mellado-Villarreal
(USDC No. 208112)
jmellado@mellado.com

/s/ Tessie Leal-Garabis
(USDC No. 218408)
tleal@mellado.com

**MELLADO & MELLADO-VILLARREAL LLC**
165 Ponce de León Ave., Suite 102
San Juan, Puerto Rico 00917-1235
Tel.787-767-2600/Fax 787-767-2645

/s/Christopher Gold, Esq. (pro hac vice forthcoming)
Florida Bar No. 088733
**GOLD LAW, PA**
350 Lincoln Rd., 2nd Floor
Miami Beach, FL 33139
Tel: 305-900-4653
chris@chrisgoldlaw.com

/s/Garrett Berg, Esq. (pro hac vice forthcoming)
Florida Bar No. 1000427
**GARRETT BERG LAW, P.A.**
555 NE 15th St., PH A
Miami, FL 33132
garrett@gberglegal.com

*Counsel for Plaintiff and the Proposed Class*

21